And move on to the next appeal. And that appeal is Julio Cesar Rojas-Guevara v Heather Dunn and Jessica Mason. Kerry Wiggins is here for Rojas-Guevara, the appellate. And Kenneth Gerard is here for Mason and Deborah Gore is here for Heather Dunn. And Mr. Wiggins, are you ready to proceed with your argument? Good morning. Yes, I am, Judge. You may. May it please the court, Kerry Wiggins on behalf of Mr. Julio Cesar Rojas-Guevara, who I will refer to as Julio. The district court in its dismissal order referred to this as a mistaken identity case. I would submit it's more appropriately designated as an unreasonable investigation case. The facts are, well, let me start with the errors that the district court committed. There are two. The first is the district court held that the allegations don't show that Ms. Mason played a meaningful role in the events. The second, of course, is that the district court said that Mason would likely be entitled to prosecutorial immunity. So I'd like to start with the shotgun pleading error. For starters, we pled this complaint really with particularity. It's really a heightened pleading, although not required. And we did name the defendants collectively. There was really no way around that. We don't know what defendants did what. This is Judge Wilson. The district court never said that the original complaint was a shotgun pleading. It didn't use that phrase in its order, did it? No, it did not. It just simply rejected the amended complaint because it determined that it failed to state a claim upon which relief can be granted and that it would therefore be futile, right? That is true. So yes, and the same for the amended complaint, the proposed amended complaint. Just the argument from the defendants was they didn't know what they were at risk of answering. I, even if given another opportunity to draft that complaint, I don't know how I would avoid using the names collectively, or I just don't know what I would do differently. Let me get to what I think is the issue, the bigger issue. And that is whether Ms. Mason is entitled to prosecutorial immunity. Although, of course, the district court did not hold she is, it said she may be. The rape occurred in 2009. This is Judge Corrigan. Can we just establish, I think it's clear by now the way the briefing played out, but can we just establish that you are not appealing the district court's decision regarding Dunn, that you're only appealing the decision regarding Mason, is that correct? Yes, Judge Corrigan. We thought we would trim the case down, eliminate what I thought was the prosecutorial immunity argument, and focus on Ms. Mason, who's the investigator. So that's correct. So the case is over with, as far as you're concerned, the case is over with as to Ms. Dunn, and you're just proceeding on the appeal of Ms. Mason's decision. I think, can I answer that with a qualified yes, Judge Corrigan, and say that if this court were to reverse Judge Story's order outright, in order, in other words, say he was wrong on points one and point two, really the only two points, and then it were to remand it, I don't know where that leaves Ms. Dunn, I mean, if the order's gone, but I guess that issue's not for today. But to answer your question, we are not proceeding against Ms. Dunn today. Thank you. Yes, sir. So back in 2009, the statutory raid happened, and the city's incoming police officers investigated very briefly. They had the name, they had an address, the age, and information that Mr. Rojas, Cesar Rojas, had a scar on his hand. They also had a phone number. What you'll notice is not in the complaint is any evidence that, in 2009, the police visited 308, the address that they had been provided, that they executed any kind of search warrant, examined the cell phone for evidence, or interviewed anyone other than the victim herself. So none of that happened. If it had, I would have put it in the complaint. So then you fast forward to 2015. I know you're familiar with the facts, but let me just reiterate, it had been six years since there had been any investigation, and Ms. Mason inherited the file, and she essentially had to figure out if Cesar Rojas was real, because for all anyone knew, Cesar Rojas was just an alias. No one had seen him other than the victim, and of course, Cesar's brother and his friend, but they were not interviewed. No one, this is in a situation where they had the suspect, and now the question is, do we have a crime that's been committed? This is a situation where they have to find a suspect, and that's the heart of our case, and I think that's where the parties and the district court disagree, is the efforts that Ms. Mason made to search these government databases, drawing all these deductions, is that some kind of pre-indictment? This is Judge Wilson. When I read the complaint, the suggestion there is that Mason could have done a better job of investigating. I don't see any affirmative acts on her part like we would see in a case where an investigator includes false information in an affidavit in support of an arrest warrant or intentionally misrepresents facts or intentionally leaves out exculpatory information. That seems to be the concern on the part of the district court here in order to support its dismissal for failure to state a claim upon which relief can be granted. Am I seeing this correctly? Well, yes, Judge Wilson. I think that's the concern the district court had. I would say she actively searched databases, and I think by citing to Rivera v. Leal, as the district court did, and saying that one doesn't have to leave one's normal working environment to do that, and ergo it still could be covered by prosecutorial immunity, I think that reads way too much into that case, especially in the year 2015 when all this happened. Every day, every minute, every hour, law enforcement officers are conducting investigations online. That's where things happen. We're conducting this court hearing online. So we allege that she searched a number of databases, retrieved a yearbook, and based on that, made a series of investigative deductions about where the defendant may be residing. So it's not just a failure... Counsel, it's a minute warning. Yes, thank you. It's not just a failure. She affirmatively took steps. This was a cold case, and really, judges... Is this a pleadings problem or a merits problem? What I mean by that is, if you're given leave to amend, I guess you had an amended complaint that was considered, do you know any more facts than are in these complaints, or is this the extent to which... Is this all the information you have? So even if you change the name from defendants to Mason, everywhere you have defendants, is this the sum and substance of what you're able to, in good faith, allege at this point? Yes, Judge. I think we do have another name and phone number to query, but this may be it. This is why, at this stage, it's so important to get to discovery. To answer your question, is it a pleading or a merits issue, I think the pleading is fine. I guess I'm wrong. Judge Stewart thought I was wrong. But the merits issue, I'm certain that Ms. Mason was off on an investigation. She had a cold case. She had a name, a name that she didn't know was an alias or not. Let me just add, the 2010 US Census, the name Rojas is listed at number 285 in the rank out of the top 1,000 names in the United States, and over 94% of those are Hispanic. Think about that. That name comes ahead of names like Anderson and Cohen and Rojas. It is a common name. To make all the deductions she did based on her internet search, it's unreasonable. And I understand we're here this morning on prosecutorial immunity, and unreasonableness gets immunity if it's in the prosecutorial role. I think what was lost on the district court and maybe my opponent is, just because, you know, all of this happened pre-indictment, and just because there's the specter of a statute running. Okay. Well, I'll save my time for rebuttal. Thank you very much. All right. Thank you, Mr. Wiggins. And we'll hear from Mr. Girard on behalf of Jessica Mason. Mayor, please, in front of the court. Good morning. My name is Ken Girard. I'm here on behalf of Defendant Jessica Mason. It is a pleasure to be in front of you today. We're here with respect to Judge Story's order denying plaintiff motion to amend the death complaint and dismissing the case otherwise. So during my honorable colleague's discussion, something was said that I want to latch upon as part of the start of my argument. And that is the notion of clarification that there is no pursuit of an appeal with respect to District Attorney Dunn. You know, the judge's order, Judge Story's order, was an order finding prosecutorial immunity. That's what it found. With respect to my client, Jessica Mason, the judge's order was a standard garden variety, good old 12B6 finding of a failure to state a claim. In fact, in the original iteration of the pleading members of this court, my client is mentioned exactly one time by name. And it says that she was an investigator in the District Attorney's office. She was sued under the color of law. Her activities were committed under the color of law. And that she was sued in her individual capacity. And that is it. Otherwise, there were no allegations. The judge, Judge Story, read the lawsuit the same way I did, which was this was a lawsuit about the District Attorney or the Assistant District Attorney's activities and found that all of those activities were, in fact, within the confines or nature of prosecutorial activities. That is, if you were to ask what is the central holding of the order, it is that. And to now hear that that is not being appealed, those findings are not being appealed, I think is fatal to this appeal, even with respect to Mason, because the judge even dropped a footnote, footnote seven, in the order and says, even if I was to construe this lawsuit so liberally as to, in fact, include Mason in every one of the activities, she would be subject to prosecutorial immunity as well. And so if that's not being appealed, if the notion of done is not being appealed, then I think, respectively, my client wins the day on that technical issue alone, because candidly, otherwise, it could result in a very serious situation. This is Judge Corrigan. Why would that be the case if, because the law is different for investigators, and it's also different for law enforcement officers than it is for prosecutors. And why wouldn't a potential reading of this complaint be that, since this was a cold case, and there really wasn't a law enforcement officer that was bringing it to the state attorney, that Mason was, in effect, acting as a law enforcement officer, acting as an investigator, and that the standards that would apply to a case like this shouldn't be absolute prosecutorial immunity, but it should be the standards that you look at under qualified immunity if it's a law enforcement officer or a investigator? Your Honor, thank you for the question, because simply the notion of prosecutorial immunity has been reviewed from the standpoint, the judge makes allusion to this in the order, from a functional approach. In other words, the title of the individual performing the act is not as important as the act itself. This was, and of course, that is sort of made manifest by the fact that the plaintiff even pleads it that way, using the collective and generic defendant as opposed to breaking out the various activities of Mason versus Dunn. He pleads it as collective activity involving the same case in the same office for the same potential prosecution. Therefore, Judge Story legitimately, and I think under the holding of Buckley, which said basically you don't divide based upon the individual, you look at the function being performed, from a functional standpoint, they were performing prosecutorial activities. That's what the judge held. And for this court to say, well, Dunn was performing a prosecutorial activity when she did all of those things, but Mason was not performing prosecutorial activity when she did the exact same thing at the same time with the same case, I believe would be inconsistent with the existing precedent. So that's my position with respect to that. And again, I went there first. That's not sort of the chronology of my argument, but I went there first because that has been something I've been waiting to hear is a bona fide statement of affirmation that Dunn truly is effectively dismissed and the allegations of error with respect to the judge's order about Dunn have been abandoned. And if they have been abandoned, that means that the court's conclusions with respect to that have been, in effect, affirmed. I think my client gets the benefit of that. Your Honor, I'll begin to now retreat a little bit and go back to... This is Judge Wilson. Is my understanding correct that the amended complaint as to Mason was dismissed without prejudice? So does Mason get another shot at it? I don't believe it was without prejudice. I believe this was the second night at the Apple. It was with prejudice. I'm looking at the order right here. Right. It just simply says they are dismissed. Page 15 of the order. All right. So wasn't there a separate judgment? Go ahead, Judge. I'm sorry, Judge Wilson. I didn't mean to interrupt. Wasn't there a separate judgment that said without prejudice or am I wrong about that? I don't see anything within the court's order or judgment that says without prejudice. It is my understanding this was a dispositive final ruling of the court that would have resolved all claims subject to this appeal. And the reason I believe that is true is because there was the original complaint, and I believe the district court followed this court's guidance that when you have a original complaint that is at least viewed by the defendants to be inadequate, whatever the reason, you have a couple of weapons under the federal rules that you have the ability to take. One would be a motion for a more definite statement or one would be a motion to dismiss. Either or, the plaintiff clearly understood that there were deficiencies or at least acknowledged there were deficiencies in the original complaint and filed a motion for leave to add. So therefore, the courts did what I think a lot of courts would do is look at that proposed amended complaint and took a look and see if it would survive a motion to dismiss and found that it would not. I think that is the second bite of the apple. And I think that when the court is faced with the second bite of the apple that does not correct the original deficiencies, I believe the court has the right to go ahead and dismiss as a full and final adjudication. And in this case, that was because of futility. The proposed amended complaint did add some allegations. That is true. My client was now mentioned by name twice. Once on Paragraph 4 where it states her title and her acting under color of law just as the first complaint. And then there is an allegation later in the lawsuit in Paragraph, I believe it is 24, that suggests that she was aware of District Attorney Dunn's activities with respect to searching various databases or a database and the other activities that mainly they were not done. And then the lawsuit states that my client, in spite of knowing that she was, meaning the DA was going to indict the plaintiff and apply for an arrest warrant, failed to intervene to stop Dunn. Now, it is unclear to me whether that is, in fact, the plaintiff attempting to argue a failed intervene theory under the Fourth Amendment or some sort of a variation on malicious prosecution, but to the extent it is, it is fatally flawed. I don't believe there is a constitutional tort for failure to intervene in this context, meaning the context of a District Attorney, the elected official, taking action to indict or pursue a prosecution against an individual and a non-barred, non-lawyer having an obligation to intervene to stop that sort of activity. And if there is, I have certainly not seen that authority. I believe that what Jones v. Cannon certainly leaves the door open that in the police officer context, at least leaves the door open, there might be such a failure to intervene on an improper arrest, but the typical vernacular where you see failure to intervene claims is in the excessive force context. So I'm not aware of that even being a constitutional tort at this point. And again, which kind of reinforces the notion, going back to Judge Story's order, that this was a 12 v. 6 simple failure to state a claim. In fact, I believe the court is somewhat dismissive of the complaint as it applies to my client, simply saying that none of the allegations really make manifest that investigator may have had any meaningful role. Counsel, this is Judge Corrigan again. You know, you've gone through what this can't be, in your view, in terms of the causes of action that wouldn't apply. I'm reminded of an old bromide that for every wrong, there's a remedy. And it certainly, at least by allegations, seems like there was a wrong here, and a person ended up spending two months in jail for something that was very serious that they didn't do based on an allegedly shoddy investigation. Are you just saying that there is no remedy in a case like this? It's just the way it goes? It's interesting. I'm suggesting, number one, that with respect to the remedy that was attempted, which was, in fact, the fine of a lawsuit having three different counts of federal torts, federal constitutional torts in federal court, was not pled appropriately. That happens, regrettably, for those who bring them. That happens customarily, that because of the nature, particularly of the immunities that are afforded public officials, it happens quite often that either the allegations are simply not specific enough, or there is a qualified immunity or a prosecutorial immunity that is available, the claim simply is not able to proceed. These immunities have evolved over time, and they are attempting to balance all of the issues you just raised. Certainly, there are issues where individuals have been harmed, perhaps being spent time in jail, but it was not warranted. But from a bigger public policy perspective, these immunities have since. What is the greater evil here? And, of course, the greater evil is with respect to allowing a prosecutor, and by extension, an investigator involved in that office, being subject to personal liability for these issues is the notion of a chilling effect with respect to the robustness of a prosecutor's office. That is the origin of these immunities. Mr. Girard, this is Jill Pryor. Doesn't due process require officers to take reasonable steps to eliminate doubts about the identity of a suspect? It seems to me that this complaint alleges that in some respect. The complaint is filled, Judge Pryor, with allegations of what was not done. If you look at Judge Story's order, he is very clear that this is a lawsuit based upon omissions as opposed to affirmative actions. And that, of course, is the way I read it as well. And so it is remarkable that in the appellant brief, the plaintiff has attempted to reframe this lawsuit to be a series of affirmative actions taken by Defendant Mason, which you will not see anywhere in the actual complaint or proposed amended complaints. And we've cited authority, Your Honor, that says you simply can't recast your allegations in your appellant brief. It is a tale of three different lawsuits. The original lawsuit, the amended lawsuit, and now the recast lawsuit as set forth in the appellant briefings. And all of a sudden, it's gone from things that we did not do or are alleged to have not done to this gross series of affirmative mistakes and miscues that we are alleged of doing. It simply doesn't make sense and it's not appropriate. Thank you, Your Honor. All right. Judge Wilson, may I ask one more question, sir? Yes, you may. Getting back to Judge Wilson's question, I'm looking at Doc 19 in the record. And there was a separate judgment entered by Judge Story. And it says, ordered in the judge that the action be in the same, hereby is dismissed without prejudice, which is what Judge Wilson asked you. Does that, what effect does that have on Judge Wilson's question whether there might be opportunity for further amendments? The without prejudice may, in fact, suggest there's an opportunity to replead the case. But again, you're going to have various issues with respects to estoppel and other sorts of potential preclusive effects depending upon the outcome of this appeal. I stand by my position that based upon the failure to actually pursue what is the key holding of the case, which is that prosecutorial immunity applies to defendant done, that if there is, and since that claim has now been abandoned, I believe it will be simply academic at this point because the issues of what was pled will simply be, will carry through to any additional pleading that is filed. Thank you, Judge Wilson. All right. Thank you, Mr. Girard. And we'll hear from Ms. Gore on behalf of Heather Dunn. Yes, good morning, and may it please the court. This is Deborah Gore with the Attorney General's Office for Ms. Heather Dunn. And I'll be very, very brief, Your Honors. Mr. Wiggins clarified now what has not been clarified entirely up to this point. He is not appealing the dismissal of Ms. Dunn from this action. So in light of that, unless the court has any questions for me, I will cede any remaining time to Mr. Girard. All right. Thank you, Ms. Gore. Thank you. And we'll hear Mr. Wiggins. You've reserved some time for rebuttal. Yes, thank you, Judge. The older I get, the better I think our complaints are, the more experience I have, yet the more they are challenged. I find myself constantly defending the complaints. We are contesting the logic of the order from start to finish, from page 1 to page 15. I'm not pursuing a-I'm not pursuing Ms. Dunn as a defendant. Um, so I-that's why I said if the court were to reverse, um, the-you know, the logic and the reason of Judge Story in-in full and remand, I don't know what that does to-to Ms. Dunn in the way of the order. But I-we are not saying that the rationale, the holding of this order is-is valid. So I-I don't want to be unclear on that point. Uh, the-the, uh, the-there was some reference to, uh, Mr. Gerard about the failure to intervene. Um, we just rely on Wilkerson v. Seymour, this court's decision in 2013, where it said, uh, what is made explicit in Jones is that a participant in arrest, even if not the arresting officer, may be liable if he knew the arrest lacked any constitutional basis and yet participated in some way. So that's-that's-but in the main- Let me-this is Judge Wilson. This is Judge Wilson. Let me ask you this question. What can you tell us to convince us that if you had another shot at filing an amended complaint, that, uh, that would not be an exercise in futility? Because I think the district judge in its order did use the word futile, that an amended complaint would be futile. So what can you tell us to convince us that if you did have an opportunity to file an amended complaint, that, uh, uh, that exercise would not be futile? Well, I would-I would name the individuals by name, uh, and then I would add further, uh, information, the best we could gather, uh, on what Ms. Mason did in the way of investigating, uh, to take her further and further away from, uh, the prosecutorial function that, uh, Ms. Dunn has raised. So, you know, uh, there's-there are a series-I agree with, uh, the court alluded to, too, it does require, uh, one to eliminate doubts. I mean, there are-in the case of Dan-Daniels v. Bango, it's an unpublished 2012 decision from this court. But, you know, if you're harboring serious doubts, or you should, objectively you should, there should be more of an investigation, uh, and that includes things that are readily available. I understand this court decided, came for them cozy, so there's nothing I can add to that discussion, um, other than to, again, uh, remove Ms. Dunn from the sphere of a prosecution. The only thing that links her to the prosecution in our complaint is the fact that she worked in the prosecutor's office. And as the court knows, the title to the job is-is really, uh, has no bearing other than her title is an investigator. Yes, we would-in closing, you know, please give us a chance, uh, to fix the complaint. Yes, we will-we will add, uh, more to it. Um, this is-this-this young man, it's not in the complaint, but he's a father, uh, married father of two children. Uh, it-it just-the devastation, uh, laid on his family for this, um, for the-this incident. And it's almost racist, uh, loquitur. Um, a terrible thing happened, and we've narrowed the universe to the potential defendants of who caused it. But it was a terrible thing, and there has to be a remedy. So I appreciate the court's time. All right. Thank you, counsel. And that completes our docket this morning. And so this court will be in recess until 9 o'clock tomorrow morning. Thank you.